The first one is docket number 22-1740. This is Nova Group-Tutor-Saliba v. United States. Mr. Walters? Good morning, Your Honor. Let's see here. You reserved four minutes for rebuttal? Yes, sir. Okay. Feel free to begin. Thank you. May it please the Court. This case involves one contract with two immediate adjacent facilities. One facility was designed by the government and built by Nova-Tutor-Saliba or the plaintiff. I'm going to call them NTS for short. That's the Mole Key Wall. One facility was designed and built by NTS. That's Pier B. This was all part of one contract. These structures were immediately adjacent. They were effectively the same structure. The government furnished and used geotechnical information and provided that to the bidders on this project for both the Mole Key Wall and Pier B. And that information applied equally to both of the facilities. Both the government and the contractor read and interpreted this baseline survey in the same exact manner. The pile tip elevations, the piles that had to be driven for the pier and the Mole Key Wall, the depth to which they had to be driven, had to be into glacially overridden soil in the Pacific Northwest in the Puget Sound. The government included these design pile tip elevations in the bid package for the Mole Key Wall. In designing the Mole Key Wall, the government relied upon the same data and interpreted it in the same manner as NTS did in designing Pier B. The actual conditions that NTS encountered, however, at both structures were the same. My understanding is we're reviewing the Court of Federal Claims decision and we have to give some deference to the claims court's fact findings. And in reviewing the contract materials and geotechnical documents, there was a lot of information in there about how a lot of the layers, beach layer, glacial soil layer, were going to be dense, very dense, that there were going to be all kinds of obstructions in there like boulders and cobbles. And so it was going to be difficult work to do the pile driving. And so for that reason, she ultimately found that the conditions were foreseeable, not unforeseeable, as reflected in the documents. So what's wrong with that fact finding? Why was that an unreasonable fact finding that we're forced to therefore reverse her findings? Well, we're challenging it on legal error in her interpretation. The lower court placed more emphasis on the fact that NTS had the responsibility for designing and building Pier B, but it only had the responsibility for building the mole key wall. What if we didn't read her analysis that way? I mean, I understand there's footnote 17, but aside from that, this opinion is a pretty lengthy, thorough opinion, really analyzing all the documents and coming to certain fact findings and putting aside footnote 17, I don't see anything in her analysis that lends itself to the idea that she based her findings on foreseeability of these difficult conditions on whether this was a design and build versus just a build contract. Well, she said that in the footnote, that the distinction was that NTS was responsible for designing Pier B, and it was not responsible. But are we to discount the many, many pages of analysis that she went through? No, but that analysis was tainted by the legal error, which was to place more risk upon NTS as a design-build contractor, to look at the exculpatory provisions that were in the contract document and apply those in a different manner as to NTS in its capacity as a design-build contractor versus its capacity as a design-bid-build contractor where it wasn't responsible for the design. So your legal error claim, I believe, is that there's a purported violation of the parole evidence rule, is that? That's one of our two issues on appeal, yes, Your Honor. So not saying that I agree with that, but even assuming that I were to agree, why is that error not harmless in this case? That error is not harmless because it taints the court's analysis and it taints the court's factual findings. That is a key piece of evidence. Modification 57, which was issued for differing site conditions at the Mulkey Wall, it's based on the same exact conditions that were encountered. It's immediately adjacent to the pier. And it's the conditions that were encountered caused the differing site condition. It caused increased variability in the building, unanticipated and unreasonable amounts of variability in driving the piles. How is this an argument about an error of law? It sounds like you're arguing the facts to us. It's an argument about an error of law because the court interpreted, in response to Judge Cunningham's question, the court interpreted and allowed parole evidence to modify and alter the terms of the contract modification. What term of the contract modification was altered? The contract modification was issued under the authority of the differing site conditions clause, which is at FAR 52-236.2. It was issued under that FAR without the parole evidence? It was issued under that FAR with the parole evidence? Without the parole evidence. No, it was the basis for the issuance of the modification 57 was the same with or without the parole evidence. I read it as just a citation, just a reference to, here's the authority that we're acting under. It's not an admission that there is an actual DS. I'm sorry, I didn't mean to interrupt you. The modification included language in there that it was entered into based on the request for equitable adjustment due to or caused by differing site conditions at the Mulkey Wall. Is there anywhere in the modification where the government says, we are hereby agreeing that there is a differing site condition at the Mulkey Wall? I think there is in the language of the modification, the supporting documentation, and the fact that there's an accord and satisfaction provision in the modification. I thought the modification forms make it quite clear that it's a settlement for a claim for an equitable adjustment or a request for equitable adjustment. So when the government settles a claim for an equitable adjustment, does that necessarily mean that the government is conceding that the claim is completely valid for everything that it's arguing for? Or is it just a settlement of a dispute? It's a contract document. It's a modification to the contract. It's modifying the terms. It's allowing for the contractor to seek relief under a FAR provision, and it's giving them the right to recover that. It becomes a contract document. It's integrated into the contract. So I think it is compelling evidence. It's not the only evidence. We're not arguing. I guess what I'm trying to figure out is, are you suggesting that because the government agreed to settle a disputed claim with respect to the Mulkey Wall, that somehow the government was forever stopped from disputing whether there was a differing site condition over at Pier B? That's not what we're arguing. What we're arguing is almost the opposite of that. The government cannot, after the fact, come back and seek to enter parole evidence to modify or alter the terms of that agreement to show that there were no differing site conditions at Pier B. Well, I guess the argument is whatever happened at Mulkey Wall and this settlement of your equity adjustment claim, Pier B is still something different. And if you're agreeing that the government's not stopped from doing a separate analysis and taking a different position with Pier B, then what was wrong with the Court of Federal Claims engaging in a purely independent analysis of the conditions at Pier B and reaching the findings that you reached? Respectfully, that analysis wasn't independent because it was tainted by the fact that the Court found the evidence at the Mulkey Wall, allowed parole evidence to modify the terms of that, and the government didn't have the ability, the government didn't come forward with any evidence to show that those conditions were different in defense of that claim. I'm not seeking a connection between the two. I think you would agree that if this thing called Mulkey Wall never existed, then this is a straightforward case and there really isn't any serious way that we could reverse the claims court decision here as to Pier B. Do you agree with that? I don't, respectfully, Your Honor, because I think the other issue that's on appeal is the way that the court interpreted NTS's responsibilities as a design-build contractor. I'm sorry, I understand the design-build thing, but let's put that to the side. So you have the design-build theory, but now you're trying to make some connection to whatever happened in resolving the dispute with the mole to how to analyze Pier B. I'm trying to understand why is there a nexus between the two? There's a nexus, a physical nexus. The structures are immediately adjacent to each other. The piles are being driven in the same area within feet of each other, and the conditions that manifest themselves that gave rise to the claim for differing site conditions, which is variability and significant variability in driving the process. But this gets to my question to you before, because it seems like you're trying to say that the government has somehow conceded that there was a different site condition at the mole, and therefore, through that settlement, is necessarily bound by that ruling as to the mole, and that position on different site condition of the mole necessarily transfers to Pier B as well. We're not saying it transfers. We're saying it's persuasive and compelling evidence of the existence at the immediately adjacent facility. And what the court did, and what we contend is legal error, is the court took that off the table by allowing the introduction of parole evidence over our objection to modify the terms of that agreement to say, okay, it says it was issued under the authority of the differing site conditions clause, and it's a settlement of a claim or an REA for differing site conditions, but based on parole evidence, a government document, it's no longer. I find that it's not differing site conditions. She didn't say what she thought it was, so she took that off the table. She prohibited us from arguing that that was compelling evidence, and we contend that was legal error. So even accepting your argument that you're making about parole evidence, what about restatement second of contract, section 218, where it talks about how a recital of a fact in an integrated agreement may be shown to be untrue? Why wouldn't that rebut the arguments you're making before us here? The fact that this, our position on that, I understand, and that the government cited to that case in its brief. The contract still has to be viewed as a whole, and this is not a situation similar to the case that was cited by the government where there was a calculation error in a recital provision. This goes to the essence of the contract modification. This goes to the very heart of it, and we contend that that's exactly what the parole evidence rule was intended to avoid, is an after-the-fact reinterpretation of the contract to benefit one party here, the government. As Judge Cunningham, I think, is pointing out, the parole evidence rule only applies to operative terms of the agreement and modifications of those operative terms. I'm still struggling to see where there's any operative term in Modification 57 that has anything to do with whether or not the government thinks there's a different site condition at the mall. I believe that the operative term is that the government acknowledged the existence of these conditions and the variability of that. I'm not sure. Maybe on rebuttal you can show me where they say that. I don't think they acknowledge that they're acting pursuant to the FAR that governs different site conditions and that your claim is based on that, but I don't know how we read that as an admission that there is such a condition. Again, respectfully, Your Honor, we're not arguing that it's an admission, but we're arguing that it's persuasive. No, you are arguing it is an admission at the mall, are you not? It's an acknowledgment of those conditions at the mall. Okay. I'll reserve the rest of my time for you. Can I ask one more question? Yeah. Okay. Are you familiar with the Meridian case? Yes, Your Honor. And if so, can you tell me how you would address that case? So the Meridian case is a recent case from this court, and it was a contract to build a flood control structure where the contractor claimed it had differing site conditions. The ultimate conclusion of that was that Meridian said that – Does that case, though, basically make your argument not work? I want to know how that relates. You don't have to recite the case to me. Just tell me how you think you can distinguish that case. I think Meridian is distinguishable because it says it's not a presumption. It does not create a presumption that the conditions encountered and acknowledged by a previous modification occur in a different situation or in a subsequent situation. That's not what we're arguing here. We're not arguing a presumption that the government has to come forward and rebut. We're arguing that it creates compelling evidence of that, and the court short-circuited that by allowing parole evidence after the fact to modify the plain meaning of Modification 57. I'll reserve the rest of my time. Okay. We'll give you three minutes on the call. Thank you, Your Honor. Mr. Hunter? I plead the court. Neither of NTS's stated grounds for appeal are valid. The parole evidence rule does not apply to the evidence challenged nor for the uses that the court considered. The footnote that NTS hangs its other argument on does not say what NTS says it does and does not constitute and cannot be properly read as the actual justification for the court's decision. What is the legal effect of Modification 57? I mean, we understand it's under the authority of differing site conditions. Why isn't that an acknowledgment, a concession, that there were, in fact, different site conditions than what had been anticipated? And so, therefore, the government is willing to go into its purse and pull out an extra $675,000 in light of that different site condition. Yes, Your Honor. I think it's available to be weighed as evidence as to whether that does constitute an admission. Certainly, NTS made the argument, and the court considered the argument at the trial. Did the court below actually consider it, or did the court below dismiss it out of hand and just do an independent analysis of just focusing on gear B without considering the fact that the very closely neighboring mole was a different site condition under the Modification 57? I think right there in footnote 17, what the court says is the value of this evidence is we can see that the court didn't actually believe this. We can see that the government didn't actually believe there was a differing site condition. So the court focuses its review instead on the factual documents on the evidence as it existed about the site there. So that takes us to the parole evidence rule. And so if claims court was wrong in considering that pre-negotiation memorandum, then she didn't have a basis to ignore Modification 57 as a possible piece of evidence to consider for a different site condition of peer B given that Modification 57 indicates there was a different site condition at the mole. Am I wrong about that? Well, Your Honor, I don't think that it fits with the characterization of the opinion as a whole. Because it's very clear from the footnote that the court considered the modification and was aware of the modification. We can see that from the text of the opinion. So the court certainly weighed it with the rest of the evidence. But where else did she weigh the Modification 57 other than in footnote 17 where she ultimately dismissed its value? She doesn't appear to speak about it very much otherwise. I think there's some up in the facts section, but not very much. But that's why I'm a little confused when you open by saying, yes, of course, Modification 57 can be used as evidence to consider whether there was a likewise a different site condition at peer B. But footnote 17, she ultimately dismissed the modification in light of what was said in the pre-negotiation memo, which necessarily relies on allowing this in in potential violation of the plural evidence rule. It's true footnote 17 does not include the rest of the opinion, but it comes in context with the rest of the opinion. So I don't think her dismissal of it can only be read as being tied to just the pre-negotiation memorandum. It's clear that she makes a legion of factual findings about the conditions at the site as to whether there was a difference. At peer B, yes, Your Honor. That there was not a differing site condition present at the peer B site. And so her ruling comes as an aside, as a footnote to that longer section. It's the first footnote in that section where she is addressing the differing site condition claim. And so read in context, I don't think that her dismissal of the modification argument can be read totally divorced from the rest of her analysis. Do you think in an unstated way she was thinking about and considering the value of the modification 57? In her analysis of peer B? No, I mean, I don't know that she's holding it very high as weight, but the trial court is weighing the evidence, and she certainly describes how she weighed this evidence. But then she spends most of her time clearly demonstrating the weight of the rest of the evidence. Now, even assuming that there were a violation for all evidence rules, I'm not saying there is, is that error harmless in this case? Yes, the error is definitely harmless, Your Honor. Okay, and why do you think that's the case? Because NTS has not challenged the court's factual findings that the contract documents, the preexisting geotechnical studies, the other information available to NTS, all put it on notice of the exact site conditions it would later encounter at the site. They knew about hard dragging. They knew about boulders, cobbles, riprap, the presence of densified soils, the presence of a pier that they demolished. They knew all the piles were down there. There's no mystery that they were going to run into hard dragging conditions, exactly what they ran into. And so the court makes, frankly, a brutal and lengthy discussion of these facts, and NTS has not challenged any of it. So the reason it's harmless error is because an essential element of both Type I and Type II differing site condition claims are that you didn't know. The site conditions have to be different. They cannot be the same as what you were told. They have to be different. But NTS hasn't challenged that. So if this court were to vacate the decision on remand, NTS would be faced with the court saying, well, I still find that you haven't, you cannot prove, you cannot establish a different site condition claim. Why aren't they entitled to have the court have to go through that on remand given that, as Judge Chen has pointed out, we don't really know how carefully the trial court judge went through Modification 57 and how she weighed it against everything else. Her friend on the other side said it tainted all of her analysis. How could we reject that possibility? Well, the court's opinion I don't think demonstrates any taint. The court is not citing back or saying that this modification, the court is not citing back to it. It doesn't appear to show any taint. In fact, the court's analysis of the contract documents is entirely independent of modification. It's not clear that there's any taint at all. Right. The other side is arguing that she needed to also weigh on the other side of the ledger Modification 57 and what that could teach her in terms of understanding whether there was a different site condition of Pier B. And you are right that her analysis is bereft of any consideration of what is the meaning and value of Modification 57. So I think that's the point that we are now wondering can it really be said to be harmless error if there was a violation of the parole evidence rule here to consider the pre-negotiation memo because she didn't ever incorporate any analysis of Modification 57 into her fact findings. I can only say I won't belabor the court with the argument I've already made but I believe that the court does in Footnote 17 weigh the evidence. She doesn't spend a lot of time on it because she clearly doesn't weigh it very heavily. That is what the trial court does is weigh factual findings. On the parole evidence issue, what's our standard of review for determining whether there was error in parole evidence treatment? Parole evidence has to be offered to vary operative terms of the contract. So words of promise, payment, transfer, release, purchase, something that actually alters or affects the obligations of the parties to the agreement. Even if this is clearly extrinsic evidence, but it's not being offered to vary any of those terms of commitment that are in the modification. Is that a question we resolve de novo? I'm sorry, the legal? Yeah, what standard when I sit down to decide who's right here as to whether the parole evidence rule was violated, am I doing that de novo all for myself or am I doing it with some deference to the trial court? I believe it's a question of law, so it's de novo. And so you're saying as a matter of law, we can read Modification 57 as having certain operative terms and certain things that are not operative terms and why are the references to differing site conditions not operative terms? Yes, Your Honor, the references to the differing site condition clause don't contain or affect any obligation of the parties. The government was not agreeing to characterize further claims as differing site condition and it changes nothing about the modification for the justification to be the differing site condition clause. What mattered there was the transfer of money. We agreed to give them money and the money was paid. So there's nothing operative left to challenge in the agreement. What if it were somehow wrong that the government was saying it was operating pursuant to the FAR that applies to differing site conditions? If that's wrong, the government really didn't have the power to act under that FAR, wouldn't that undermine the binding nature somehow of the modification? I'm not sure how, Your Honor. You mean if they selected an incorrect justification for the modification? I suppose that would be the argument, yes. I guess I haven't briefed that point, but I'm not aware of any party challenging it. Everybody's happy with what happened. They asked for money. They got money. That agreement is concluded in no terms or wherever before the trial court or this court being challenged. But the basis for them getting their money was a conclusion that there was a different site condition at the mall. I mean, wouldn't it be illegal for the government to transfer an extra $675,000 if the government didn't believe there was a different site condition? I don't know that it would be illegal, Your Honor. It's certainly the justification. It doesn't seem to match up with the pre-negotiation memorandum. But I don't know that it would be illegal for them to transfer, especially when normally things are considered illegal on judicial review and the court would look at the whole of the justification and determine what's the government's reasoning for it. Now, it's true that the modification contains a justification that we later cite and say we didn't actually believe there was a different site condition there. But that's something that the court can suss out on review, which is why we provided the pre-negotiation memorandum for the court to look at. It's also why we cite to the sections of the restatement regarding factual recitals. To the extent the modification contained an admission or could be characterized as making a factual claim, here's a different site condition, parties can always challenge factual recitals because the trial court is the finder of fact, not the contracting officer, not the government agents. In the reply brief, NTS talks about some other requests for one-time authority in June of 2015. This is another government document that apparently they put in front of the trial court and they suggest that this is further evidence that, I think they're arguing that the court of claims should have considered and weighed in and it goes to whether or not the government really believed there was a different site condition or not. You didn't have a chance to brief this, but I assume you're familiar with what they're arguing about this one-time authority. It is slipping my mind right now. Okay. I don't know that I have this complete. It's cited at page five of the gray brief, a June 30th, 2015 Navy request for one-time authority for the contract officer to resolve the Tier D claim, which they characterize as the government agreeing that the resistance to the pile penetration at the Mulkey Wall was substantially greater than had been anticipated. It's more extrinsic evidence that I think their argument seems to be if the court below is going to allow your extrinsic evidence, I think she did also allow this evidence, but she never talked about it and that that's somehow a problem. Do you have a response to that argument? Your Honor, coming down to the grounds for appeal that they've actually stated, counsel even up here said, well, we're arguing that parole evidence is improperly admitted. There's no argument, at least maybe until the appeal brief here, that other facts should have been considered. Well, the standard for that is clear error, and it's something that should have appeared in the opening brief, so we would have a chance to respond to it. But to the extent that they're concerned that the court hasn't weighed all of the evidence, NTS is not showing that concern with its attention to what the court actually said because it's ignoring the bulk of the court decision. Do you believe the Meridian case helps you, and if so, tell me how? Yes, Your Honor. The Meridian case is the Federal Circuit stating that modifications don't establish a presumption or a history of modifications, don't establish a factual presumption moving forward. The basic principle there is that trial court always conducts de novo review of facts. That is the statement of the Federal Circuit. It's not our mischaracterization. It's not something that is easily distinguishable on facts because it's a legal principle, that is the statement of this court, not the statement of the government. And so Meridian Engineering just simply stands for the principle that modifications are not binding on the trial court. The trial court's entitled to weigh them as evidence, perhaps going in the fact bucket, but weigh them as evidence. They're not legally binding. They are not preclusive on the trial court's conditions. And so the Meridian Engineering case simply stands for that principle, which does support our case. In your last minute, could you speak a little bit to the appellant's second argument about Pier B being contractor-designed and somehow that is unfairly weighed against the contractor? Yes, Your Honor. I think first that is a mischaracterization of what's being said in the footnote. If you read that what NTS focuses on is the very last statement, the very last sentence in the footnote that says there's a significant difference in what transpired in the mole, the government provided the design, and pile tip elevations while NTS designed and chose the pile lengths. NTS ignores the rest of the paragraph. The sentence right before that says, however, the government did not deem the situation of the mole key wall to be a differing site condition. The normal way of reading a paragraph is you'd think the next sentence is relevant to the first sentence. What she's talking about is why the government might have a reason, a rationale for making its decision. That's the subject of the paragraph. NTS says they gave us one over here. They should have to give us one over here. And what she says is, well, that's not actually what they believed. And then this last sentence is a description of what might be going on in the government's mind. Now, it's not very clear. I will say that I don't think the Court's statement here is very clear, although I don't think that that really speaks well for NTS's argument because the ‑‑ I'm going to continue, but please let me know. But the footnote itself does not have a lot of citation or support or argument to the contrary of the rest of the opinion, which is subheaded and lengthily supported. And so it's not clear what the footnote is saying, but what I think it's talking about, the factual situation, is that this is going to take a second. Sorry. I can stop if you want. Go ahead. The beach layer is where the contract said ‑‑ is where the piles met refusal. The glacial till is right below. Now, counsel said when he was up here that the piles were supposed to go to the glacial till. Well, the contract said glacial till or practical pile refusal. How are they supposed to know? Well, the contract required them to do a test pile program. All the test piles met refusal in the beach layer, and then NTS said it's pile elevations. It's pile lengths. That matters, right? You set your pile lengths. If your piles aren't going to go down this far, then maybe this works if the water line is here. But if you set your piles like they're going to go all the way down to here and they actually stop here and you knew that beforehand, they're going to be sticking out of the water very far. And that is the condition that they ran into. And that appears to me to be the factual situation that she's referencing here. Sorry for going over. Wow. That's a lot. Okay. Thanks very much. Let's give the appellant the full four minutes. Thank you, Your Honor. Three points. One, in no particular order, in response to Meridian, I believe the government's attorney said that Meridian stands for the proposition that the contracting officer is not bound by the contract modification. Why do we have contract modifications? If the government's not bound by a provision in the contract modification, that puts a federal government contractor at significant risk and uncertainty. How do they price their work? How do they bid their work? If they have to realize going in that if a contract modification is issued under one of the accepted remedy granting provisions of the contract, there's no guarantee that a court reviewing that can't change its mind and find that there's a different basis for that. That kind of tips contract, just contract interpretation provisions on its head. If Meridian does stand for that, then I think that gives this Court an opportunity to clarify that. So I don't think that's what Meridian says. The second point I would like to point out is Mr. Hunter mentioned the indicator pile program and how the contractor was required to perform that indicator pile program to determine where it would set its piles, how far down it could drive this. That was post-award. That was after award. That was a contract obligation that they had to perform. And the Court found that there were, you know, there were difficulties in that pile program. That should not have interfered or in any way influenced the Court's decision on whether there was a differing site condition clause. Differing site condition clause is a no-fault provision. It's not, it does not, should not be reviewed based on what the contractor knew after a contract. It's based on the conditions at the time of bid. And any obligations, exculpatory provisions in the contract that require the contractor to take certain actions after award should not influence the contracting officers or the Court's decision on how that different site condition was encountered. The contractor should be entitled to review that based on, determine that, address the foreseeability of that risk based on the information it had at the time of bid. And that's not what the Court found here. The Court found that the conditions that were encountered and the obligations that the contractor had after award influenced this decision on whether NTS could establish a differing site condition at the moment. I believe that violates fundamentally this Court's decision in Metcalf construction, where in that case the Court was looking at whether the allegations as to whether the government had breached its implied covenant of good faith and fair dealing. And they were looking at it in section B of that decision. The Court viewed that through the lens of the site investigation clause, which is a post-award obligation, and the differing site conditions clause. And the Court there said you cannot look at an exculpatory provision that exists post-award and read out the differing site conditions clause. It violates a fundamental rule of contract interpretation. You have to read the contract as a whole. We contend respectfully that that's what the Court did here on our differing site conditions analysis, on its analysis of the differing site conditions clause. And there are other examples that we believe that flow throughout the Court's statement in footnote 17. I mentioned the pile tip program. Another example of that is the baseline survey. The Court found that the baseline survey did not represent how far the piles could be driven down. But the baseline survey, and that we would need to make sure that we would achieve practical pile refusal. But the baseline survey is something that applied to both projects. And where the Court, where the contracting officer and the government found there was differing site conditions at the Mole Key Wall, it was based on the same information. The government used the same information to develop its design in the baseline survey. Thank you, Your Honor. Roberts.